UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Sears Roebuck & Company and
Kmart Corporation

    v.                                      Civil No. 14-cv-422-JL
                                              Opinion No. 2017 DNH 185
W/S Lebanon LLC, W/S Development
Associates LLC, S.R. Weiner
& Associates, C/O Robert Currey
Associates, now known as WS Asset
Management Inc., Windalier
West Lebanon, LLC, K.G.I.
Properties, LLC and Keypoint
Partners, LLC


**MEMORANDUM ORDER**


    This action, arising out of flood damage to commercial property following a hurricane, implicates a party's liability for breach of a contract to which it is not party. Plaintiffs Sears Roebuck and Company and Kmart Corporation both suffered property damage at stores located in West Lebanon, New Hampshire, as a result of flooding brought on by Hurricane Irene in 2013. They brought separate actions against their respective landlords (W/S Lebanon LLC and Windalier West Lebanon, LLC) and property managers (W/S Development Associates, LLC, WS Asset Management, K.G.I. Properties, LLC, and Keypoint Partners, LLC), which were later consolidated for all purposes.[1]

---

[1] See Order of Consolidation (doc. no. 23).

The plaintiffs bring various breach of contract, negligence, promissory estoppel, and accounting claims against the defendants.[2] Specifically, Kmart asserts claims of negligence and breach of contract against its lessor, Windalier, and Windalier's property managers, K.G.I. and Keypoint. Sears asserts claims of negligence, breach of contract, promissory estoppel, and a claim for accounting against its lessor, W/S Lebanon, and W/S Lebanon's property managers, W/S Development and WS Asset Management (the "WS defendants").

All defendants moved for summary judgment on all claims against them.[3] Both plaintiffs also moved for summary judgment, albeit only on their breach of contract claims.[4] The court denied the plaintiffs' motion for partial summary judgment entirely, and granted Windalier's and the WS defendants' motion for summary judgment in part and denied it in part, for the reasons stated on the record at the September 1, 2017 oral argument.

This order resolves K.G.I.'s and Keypoint's motions for summary judgment. Because there is no privity of contract between Kmart and its property managers and because Kmart has

---

[2] Their First Amended Consolidated Complaint (doc. no. 27) is operative.

[3] Document nos. 56, 57, and 59.

[4] Document no. 58.

2

not identified a legal duty owed it by its property managers, the court grants K.G.I.'s and Keypoint's motions for summary judgment.

I.  **Applicable legal standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must "assert the absence of a genuine issue of material fact and then support that assertion by affidavits, admissions, or other materials of evidentiary quality." Mulvihill v. Top-Flite Golf Co., 335 F.3d 15, 19 (1st Cir. 2003). "A genuine issue is one that could be resolved in favor of either party, and a material fact is one that has the potential of affecting the outcome of the case." Vera v. McHugh, 622 F.3d 17, 26 (1st Cir. 2010) (internal quotation omitted).

Once the movant has made the requisite showing, "the burden shifts to the summary judgment target to demonstrate that a trialworthy issue exists." Mulvihill, 335 F.3d at 19. The nonmoving party "'may not rest upon the mere allegations or denials of [the] pleading, but must set forth specific facts showing that there is a genuine issue' of material fact as to each issue upon which he or she would bear the ultimate burden

3

of proof at trial." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52-53 (1st Cir. 2000) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).

As it is obligated to do in the summary judgment context, the court "rehearse[s] the facts in the light most favorable to the nonmoving party (here, the plaintiff) consistent with record support," and gives them "the benefit of all reasonable inferences that those facts will bear." Noviello v. City of Boston, 398 F.3d 76, 82-83 (1st Cir. 2005) (internal citation omitted). The following background takes this approach, drawing on the parties' recitations of undisputed facts.

**II. Background**

Kmart has leased and occupied commercial property in a shopping plaza (the "Kmart Plaza") in West Lebanon, New Hampshire, since May 1974. The Kmart Plaza sits on the east side of the Connecticut River and south of the Mascoma River. On August 29, 2011, Hurricane Irene caused much of the Connecticut River and its tributaries to flood. The flooding caused water damage to the Kmart Plaza, including the building occupied by Kmart. The contents of Kmart's building were also damaged.

At the time of the event, Kmart leased its building from Windalier. From July 2003 until a month before the event,

4

K.G.I. managed the property pursuant to an agreement between it
and Windalier.  That agreement terminated, however, on July 31,
2011.  Windalier then contracted with Keypoint to manage the
property, and Keypoint was the property manager when Hurricane
Irene struck.

III. **Analysis**

As discussed supra, Kmart has brought claims for breach of
its lease against its landlord, Windalier, and against
Windalier's property managers, K.G.I. and Keypoint.  Kmart has
also brought negligence claims against all three of these
defendants.

The court grants K.G.I.'s and Keypoint's motions for
summary judgment on Kmart's breach of contract claims against
them because they were not parties to the lease and, further,
Kmart has not pleaded breach of, nor offered any evidence
suggesting it has standing as a third-party beneficiary to sue
under, the property managers' contracts with Windalier.  Because
these defendants owe Kmart no common-law duty under New
Hampshire law, the court also grants the defendants' motions for
summary judgment on to Kmart's negligence claims.

    **A.   Kmart's contract claim against K.G.I. and Keypoint
       Count 11)**

To succeed on a breach of contract claim under New
Hampshire law, the plaintiff must show:  "(1) that a valid,

5

binding contract existed between the parties, and (2) that [the defendant] breached the terms of the contract." Wilcox Indus. Corp. v. Hansen, 870 F. Supp. 2d 296, 311 (D.N.H. 2012) (citing Lassonde v. Stanton, 157 N.H. 582, 588 (2008); Bronstein v. GZA GeoEnvironmental, Inc., 140 N.H. 253, 255 (1995)). This case does not implicate the contract's existence or validity, but only whether a breach of existing, valid contracts occurred. "A breach of contract occurs when there is a '[f]ailure without legal excuse, to perform any promise which forms the whole or part of a contract.'" Bronstein, 140 N.H. at 255 (quoting Black' Law Dictionary 188 (6th ed. 1990)).

The parties' arguments touch on three contracts: the lease agreement between Kmart and Windalier,[5] the property management agreement between Windalier and K.G.I.,[6] and the property management agreement between Windalier and Keypoint.[7] Kmart bases its contract claim against K.G.I. and Keypoint on a lease to which neither of the property managers was party: the Kmart-Windalier lease. Sections of that lease, Kmart alleged,

> obligated Windalier, and its agents KGI and Keypoint, to maintain, replace and repair the roof, outer walls and structural portions of the building necessary to maintain the building in a "safe, dry and tenantable condition" and in "good order and repair"[;] . . . to

---

[5] Exhibit C (doc. no. 56-5).

[6] Exhibit O (doc. no. 56-17).

[7] Exhibit N (doc. no. 56-16).

6

>  maintain, replace and repair the underground utility
>  installations, which include storm sewer systems[;
>  and] . . . to properly service the building's storm
>  sewers.[8]

The damage that Kmart sustained as a result of the flooding caused by Hurricane Irene, Kmart further alleged, was "proximately caused by Windalier, K.G.I. and Keypoint's breach of their duties" under the contract between Windalier and Kmart.[9] It is undisputed that neither K.G.I. nor Keypoint is party to that lease. Because a valid, binding contract does not exist between Kmart, on the one hand, and K.G.I. or Keypoint, on the other, Kmart's breach of contract claim against K.G.I. and Keypoint fails as a matter of law.[10] Pstragowski v. Metro. Life Ins. Co., 553 F.2d 1, 4-5 (1st Cir. 1977) (non-party to a contract has no remedy for breach).

In an attempt to salvage its contract-based claim against the two property managers, Kmart argues that it was a third-party beneficiary of the property management agreements between K.G.I./Keypoint and Windalier. These agreements obligated the property managers to "continually operate and manage the

---

[8] Compl. (doc. no. 27) ¶¶ 115-117.

[9] Id. ¶ 118.

[10] By not taking up this argument in its opposition, Kmart appears to concede that it cannot recover from K.G.I. and Keypoint under the Kmart-Windalier lease. See Plaintiffs' Opposition Mem. (doc. no. 74-1) at 31-33.

7

Property consistent with good, sound, and prudent management practices and consistent with standards of comparable properties in the same area . . . ."[11]  Kmart cannot recover under this theory for two reasons.

First, as discussed supra, Kmart has premised its claim on a breach of the Kmart-Windalier agreement.[12]  Nowhere in the Complaint does Kmart raise or reference the property management contracts.  Kmart has not sought to amend its Complaint to reflect this new theory of the case, and now -- with trial looming on the horizon -- is too late to do so.  See Steir v. Girl Scouts of the USA, 383 F.3d 7, 12 (1st Cir. 2004) ("[T]he longer a plaintiff delays, the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend."); Cruz v. Bristol-Myers Squibb Co., PR, 699 F.3d 563, 570 (1st Cir. 2012) (affirming denial of motion to amend brought nine months after scheduling order deadline).

Second, and more to the point, the third-party beneficiary exception to the general rule "that a non-party to a contract

---

[11] Exhibit N (doc. no. 56-16) ¶ 2.6; Exhibit O. (doc. no. 56-17) ¶ 2.6.

[12] See Compl. (doc. no. 27) ¶¶ 115-118.

8

has no remedy for breach of contract," Brooks v. Trustees of Dartmouth Coll., 161 N.H. 685, 697 (2011) does not apply under these facts.

> A third-party beneficiary relationship exists if: (1) the contract calls for a performance by the promisor, which will satisfy some obligation owed by the promisee to the third party; or (2) the contract is so expressed as to give the promisor reason to know that a benefit to a third party is contemplated by the promisee as one of the motivating causes of his making the contract.

Id. (citing Tamposi Associates v. Star Mkt. Co., 119 N.H. 630, 633 (1979)). "[I]t is not enough that the contract manifests the parties' intention to confer upon a third party the benefit of the promised performance. Rather, the contract must show that the parties considered the third party' legal status and intended to confer upon him a right to sue the promisor." Id. at 698 (internal quotation and citation omitted). Absent manifestation of that intent to confer a right to sue, "the third party is only an incidental beneficiary, having no contractual standing." Id. (quotation omitted).

Seeking to establish its third-party beneficiary standing, Kmart cites only one provision of the property management agreements: the obligations on K.G.I. and Keypoint to "continually operate and manage the Property consistent with good, sound, and prudent management practices and consistent

9

with standards of comparable properties in the same area."[13]
Such general language, in and of itself, does not demonstrate
that the parties to the property management agreements --
Windalier, K.G.I., and Keypoint -- intended to confer a direct
benefit on Kmart or to grant Kmart a right to sue to enforce the
agreements' terms.[14]

Nor can it do so when read in the context of other
agreement terms clearly evincing the parties' intention that the
property managers manage the property for the benefit of
Windalier -- the landlord, not the tenant. For example, the
agreements provide that, except as provided within the
agreements themselves, "everything done by [the property
manager] under this Agreement shall be done on [Windalier's]
behalf, and all obligations or expenses incurred pursuant to
this Agreement shall be for the account of, and at the expense
of" Windalier.[15] Similarly, the agreements required the property
managers to "cause to be maintained, naming [Windalier] as

---

[13] See Plaintiffs' Opposition Mem. (doc. no. 74-1) at 31-32 (quoting Exhibit N (doc. no. 56-16) ¶ 2.6; Exhibit O. (doc. no. 56-17) ¶ 2.6).

[14] Even if it did so, the court is skeptical that Kmart could recover under this theory against K.G.I., in light of the undisputed fact that the Windalier-K.G.I. property management agreement was no longer in effect at the time of the event giving rise to Kmart's claims. The court need not reach that question, however.

[15] Exhibit N ¶ 8.2; Exhibit O ¶ 8.2.

additional insured, a Comprehensive General Liability insurance policy, covering its acts or omissions," within stated limits.[16] Furthermore, to the extent that the agreements address the tenants at all, those provisions give no indication that the tenants were considered beneficiaries of the agreement. To the contrary, those provisions address the property manager's authority to take action <u>against</u> the tenants,[17] to inform them of all rules and regulations, and to enforce the tenants' compliance with those rules and regulations.[18]

Because Kmart failed to plead breach of the contracts between the property managers and Windalier, and because, even had it done so, no provision in the contracts indicate any intention by the parties to recognize Kmart as a third-party beneficiary, the court dismisses Kmart's breach of contract claim (count 11) as against K.G.I. and Keypoint.[19]

### B. Kmart's negligence claims against K.G.I. and Keypoint Counts 9 and 10)

To succeed on a claim for negligence, the plaintiff must "establish that the defendant owed a duty to the plaintiff,

---

[16] Exhibit N ¶ 3.12; Exhibit O ¶ 3.12.

[17] <u>See</u> Exhibit N ¶ 3.5; Exhibit O ¶ 3.5.

[18] Exhibit N ¶ 3.2; Exhibit O ¶ 3.2.

[19] This count remains in play, however, as against Windalier.

11

breached that duty, and that the breach proximately caused the claimed injury." Estate of Joshua T. v. State, 150 N.H. 405, 407 (2003) (quotations and citations omitted). K.G.I. and Keypoint argue that Kmart's claim fails as a matter of law because they owed no common law duty of care to Kmart.[20] "Whether a duty exists in a particular case is a question of law" in New Hampshire. Carignan v. New Hampshire Int'l Speedway, Inc., 151 N.H. 409, 412 (2004). "Absent the existence of a duty, a defendant cannot be liable for negligence." Id. (citing Williams v. O'Brien, 140 N.H. 595, 599 (1995)).

"A duty generally arises out of a relationship between the parties." Sisson v. Jankowski, 148 N.H. 503, 506 (2002). "The existence and extent of that duty depends upon the nature of" the parties' relationship. Sintros v. Hamon, 148 N.H. 478, 480 (2002). Here, the relationship among Kmart, Windalier, K.G.I., and Keypoint is generally contractual in nature. Kmart's reliance on its lease with Windalier its basis for the alleged duty emphasizes this point. Specifically, Kmart alleges that all three defendants "owed Kmart a duty to operate, manage, maintain, inspect, control, repair and replace the Kmart Building, underground utility installations, storm sewers,

---

[20] K.G.I. Mem. (doc. no. 56-1) at 26-29; Keypoint Mem. (doc. no. 57-1) at 23-26.

12

Landlord Common Areas, and parking areas with reasonable care and to otherwise ensure that the Kmart Building was not subject to damages that could be avoided with the exercise of reasonable care."[21]  Kmart has drawn this duty from its lease with Windalier, which it obligates Windalier to "maintain, repair, and replace" at least certain portions of the leased property itself, including "underground utility installations"; to "maintain all driveways, sidewalks, street and parking areas free of all settling, clear of standing water, and in a safe, slightly and serviceable condition"; and to ensure that the leased property is "property serviced with . . . sewer and other utilities . . . ."[22]

When a contract defines the relationship, "ordinarily the scope of the duty is limited to those in privity of contract with one another." Sisson, 148 N.H. at 505.  Here, no such privity exists between Kmart, on the one hand, and K.G.I. and Keypoint, on the other.  This suggests that K.G.I. and Keypoint cannot be held liable in tort for breach of a duty defined by a contract to which they are not parties.

Attempting to overcome this, Kmart invokes the New Hampshire Supreme Court's conclusion, in Mbahaba v. Morgan, 163

---

[21] Compl. (doc. no. 27) ¶¶ 97, 103, 109.

[22] Exhibit C (doc. no. 56-5) ¶¶ 15, 17.

13

N.H. 561 (2012), that "a party without a direct contractual duty who nonetheless possesses the knowledge and authority of a landlord may be held liable for his own negligence." Id. at 567. Mbahaba specifically addressed, and answered in the affirmative, the question of whether a property manager could be held liable by a tenant for negligence. It does not, however, appear to create a general duty, owed by a property manager to the tenant of a commercial property, to prevent property damage and economic loss.

Mbahaba concerns a property manager's liability in negligence when a tenant is injured in a residential apartment. The New Hampshire Supreme Court highlights the personal injury context of that liability, basing it on the landlord having "demise[d] dangerous property." Id. at 566-67 (quoting Sargent v. Ross, 113 N.H. 388, 391 (1973)). Once he has done so, his "is the ordinary case of liability for personal misfeasance, which runs through all the relations of individuals to each other." Id. at 567 (quoting Sargent, 113 N.H. at 391). The landlord's "tort duty exists, independent of any contractual obligation, because," having leased property with a known danger, "a reasonable person would exercise a certain degree of care for the protection of a vulnerable tenant." Id.

There is no indication here that Windalier "demise[d] dangerous property" to Kmart. At oral argument, Kmart's counsel

argued that the property's "danger" was inherent in its situation in a flood zone. But nothing in Mbahaba suggests the duty recognized therein contemplates that sort of "danger." To the contrary, Mbahaba itself addressed the danger, known to the property manager in that case, of peeling lead paint to the young daughter of a tenant. In Sargent, on which Mbahaba relies, the New Hampshire Supreme Court abolished "the doctrine of landlord nonliability in tort," and concluded that a landlord may be so liable

> for injuries resulting from defective and dangerous
> conditions in the premises if the injury is
> attributable to (1) a hidden danger in the premises of
> which the landlord but not the tenant is aware, (2)
> premises leased for public use, (3) premises retained
> under the landlord's control, such as common
> stairways, or (4) premises negligently repaired by the
> landlord.

Sargent, 113 N.H. at 392. Kmart's location in a flood zone of which both landlord and tenant appear to have been equally aware, falls under none of these categories. And the damages that Kmart claims here -- compensation for losses relating to damage to the property itself and to Kmart's own property -- are not the sort of "injury" contemplated by Mbahaba and Sargent.[23]

---

[23] As Keypoint's counsel observed at oral argument, Mbahaba focuses on the imbalance of knowledge between the landlord and a "vulnerable tenant," 163 N.H. at 567, which renders it less applicable to the relationship between two sophisticated parties to a commercial lease.

15

Kmart has grounded the duty it claims all three defendants owe it squarely in the contract between it and its lessor, Windalier, and to which the property managers are not parties. It has not identified any common-law duty owed it by the property managers.[24] Accordingly, the court grants their motions to dismiss Kmart's negligence claims against them.

## IV. Conclusion

For the reasons discussed above, the court GRANTS K.G.I.'s and Keypoint's motions for summary judgment.[25]

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:    September 6, 2017

cc:  Jamie N. Hage, Esq.
     Richard J. Sprock, Esq.
     Robert P. Louttit, Esq.
     Kathleen A. Davidson, Esq.
     Mark W. Shaughnessy, Esq.
     Patrick Martin Audley, Esq.
     Quinn Emmet Kelley, Esq.

---

[24] The same may well hold true for Windalier and the WS defendants, and may entitle them -- at some juncture -- to judgment as a matter of law on the negligence claims against them. As the court noted during oral argument, however, they did not move for summary judgment on these grounds, invoking only an "act of God" defense and the doctrine of avoidable consequences. See Defendants' Mem. (doc. no. 59-1) at 13-19.

[25] Document nos. 56 and 57.

Michael P. Johnson, Esq.
Douglas N. Steere, Esq.
Clara E. Lyons, Esq.
David F. Hassett, Esq.
Matthew G. Lindberg, Esq.
Scott T. Ober, Esq.
John M. Dealy, Esq.